IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KNOW YOUR IX, a project of Advocates for Youth, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> ELISABETH D. DEVOS, in her official capacity as United States Secretary of Education, et al., <br><br> Defendants. | Civil Action No. 1:20-cv-1224-RDB |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, SPEECH FIRST, INC., AND INDEPENDENT WOMEN'S LAW CENTER'S MOTION TO INTERVENE AS DEFENDANTS**

Plaintiffs Know Your IX, a project of Advocates for Youth, Council of Parent Attorneys and Advocates, Inc., Girls for Gender Equity, and Stop Sexual Assault in Schools (collectively, "Plaintiffs") initiated this action to have this Court adjudicate a discrete legal issue: whether the U.S. Department of Education ("ED") violated the Administrative Procedure Act ("APA") by promulgating regulations that sharply limit educational institutions' obligations to respond to reports of sexual harassment and assault (the "Rule"). Movants Foundation for Individual Rights in Education ("FIRE"), Independent Women's Law Center, and Speech First, Inc. (collectively, "Movants") seek to intervene to have this Court rule on a decidedly separate legal question: whether the definition of sexual harassment that ED employed for over two decades—and which is not the definition adopted in the Rule—would violate free speech.

The U.S. District Court for the Southern District of New York has already squarely rejected identical arguments for mandatory and permissive intervention in a similar action. And for good reason, because where Movants have been permitted to intervene in the U.S. District

Court for the District of Columbia, they have already unnecessarily complicated and delayed the litigation. Here too, this Court should deny Movants' attempt to expand the scope of this action in the hope that they can obtain a judicial ruling cementing their policy goals despite the fact that those topics are not implicated here. Moreover, Movants' lack of a cognizable interest in this litigation is made plain by their raising only generalized policy concerns and conflating the standards for standing and intervention. Their purported interests, if any, will not be impaired by Plaintiffs' APA case, which does not raise a First Amendment challenge, regardless of how it is decided. If a subsequent, new regulation introduces a definition of sexual harassment that allegedly threatens to infringe on free speech rights, Movants can bring suit; at present, however, such a suit would be premature, since any injury would be purely speculative.

For the reasons that follow, this Court should deny Movants' attempts to expand the present litigation to tackle their hypothetical concerns rather than Plaintiffs' tangible ones. Instead, Movants can submit their arguments as *amici*.

## BACKGROUND

In May 2020, Defendants promulgated the Rule at issue in this case, *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) (to be codified at 34 C.F.R. Part 106). The Rule introduced a tripartite definition of "sexual harassment" which schools must investigate if named in a formal complaint: conduct that is based on sex and is (1) quid pro quo harassment by an employee; (2) sexual assault, as defined by other regulatory schemes; or (3) "[u]nwelcome conduct determined by a reasonable person to be so severe, pervasive, *and* objectively offensive that it effectively denies a person equal access to the recipient's education program or activity." § 106.30(a) (emphasis added). The last prong of this definition marks a departure from decades of ED

interpretations that Title IX, like other civil rights laws, covers harassment that is "severe *or* pervasive" for purposes of administrative and institutional enforcement. Compl. ¶¶ 53, 83–86.

On May 14, 2020, Plaintiffs filed this action alleging that certain provisions of the Rule, including Section 106.30 and its new definition of sexual harassment, are contrary to law, arbitrary and capricious, an abuse of discretion, and thus invalid under the APA. Plaintiffs did not allege that the "severe *and* pervasive" definition is unconstitutional, nor did ED in the Rule assert that the "severe *and* pervasive" definition was constitutionally mandated.

On June 24, 2020, Movants sought to intervene as defendants in this APA case. Mot. to Intervene, ECF 20-1. Movants are three nonprofit advocacy organizations that describe themselves as dedicated to promoting free speech and due process on college campuses. *Id.* at 4. Movants do not claim that the Rule will place any restrictions directly on their organizations or that their organizations are subject to Title IX. Instead, their argument for mandatory and permissive intervention boils down to a desire to uphold the Rule's "severe and pervasive" definition of sexual harassment on First Amendment grounds.

To-date, some or all of the Movants have pursued mandatory and permissive intervention in two of the three other lawsuits challenging the Rule.[1] Those APA actions, each brought by state attorneys general, challenged some of the same provisions as Plaintiffs do, as well as many other parts of the Rule. In addition to the argument raised in the present Motion to Intervene, Movants in those cases further sought to intervene in order to argue that the grievance procedures adopted in the Rule were required by the Due Process Clause. Partially Opposed Mot. to Intervene, ECF 27, *Commonwealth of Pa. v. DeVos*, No. 1:20-cv-1468-CJN (D.D.C. June 25, 2020); Mot. to Intervene, ECF 24, *State of N.Y. v. U.S. Dep't of Educ.*, No. 1:20-cv-4260-JGK

---

[1] Upon information and belief, Movants have expressed their intent to intervene to plaintiffs in the third lawsuit. *Victim Rights L. Ctr. v. DeVos*, No. 1:20-cv-11104 (D. Mass. filed June 10, 2020).

(S.D.N.Y. June 29, 2020). On July 6, 2020, Judge Nichols in the U.S. District Court for the District of Columbia summarily permitted the three Movants to intervene under Federal Rule of Civil Procedure 24(b). Minute Order, *Commonwealth of Pa. v. DeVos*, No. 1:20-cv-1468-CJN (D.D.C. July 6, 2020) ("D.D.C. Minute Order"). On July 11, 2020, Judge Koeltl of the U.S. District Court for the Southern District of New York denied in a memorandum opinion and order Movant FIRE's motion to intervene under Rule 24(a) and (b). *State of N.Y. v. U.S. Dep't of Educ.*, No. 20-CV-4260 (JGK), 2020 WL 3962110 (S.D.N.Y. July 10, 2020).

## ARGUMENT

Movants argue that they are entitled to intervene as of right under Rule 24(a)(2). Their arguments fail because they point to no substantial interest that will be impaired by this litigation and that is not adequately represented by the government. Movants also request the Court to permit them to intervene pursuant to Rule 24(b). The burden that the addition of new parties and legal issues will pose—as confirmed by Movants' actions in parallel litigation—would result in undue delay and prejudice to Plaintiffs, harms that substantially outweigh any potential value of Movants' contribution to the adjudication of Plaintiffs' APA claims. While the Court should deny Movants' motion, Plaintiffs would consent to Movants presenting their perspective to the Court through an *amicus* brief.

### I.  Movants Are Not Entitled to Intervene as a Matter of Right.

To intervene as of right, Movants must show: (1) a significant protectable interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the Movants' interest is not adequately represented by existing parties to the litigation.[2] *See Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (quoting *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991)); *see also* Fed. R. Civ. P. 24(a)(2). A party will not be

---

[2] Plaintiffs do not dispute the timeliness of Movants' motion.

4

permitted to intervene as of right unless it satisfies all of the criteria under Federal Rule of Civil Procedure 24(a)(2). *See Md. Restorative Justice Initiative v. Hogan*, 316 F.R.D. 106, 111 (D. Md. 2016) (citing 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909, at 390 (3d ed. 2007, 2016 Supp.)). Movants should be denied intervention as of right because they have failed to established each of the requisite elements.

### A. Movants have not demonstrated a direct substantial interest that would be impaired by this litigation.

To establish a right to intervene, Movants must show that they possess a "direct or substantial interest" in the underlying case. *Am. Coll. of Obstetricians & Gynecologists on behalf of members & members' patients v. U.S. Food & Drug Admin.*, No. CV TDC-20-1320, 2020 WL 3184024, at *2 (D. Md. June 15, 2020) (citing *Teague*, 931 F.2d at 261). For an interest to be "significantly protectable," *see Teague*, 931 F.2d at 261, intervenors must "stand to gain or lose by the direct legal operation" of the district court's judgment in the underlying action. *Am. Coll. of Obstetricians & Gynecologists*, 2020 WL 3184024, at *2; *Md. Restorative Justice Initiative*, 316 F.R.D. at 115. Further, Movants' interest "'must bear a close relationship to the dispute between the existing litigants' and be direct, 'rather than remote or contingent.'" *Lee v. Va. Bd. of Elections*, No. 3:15-CV-357-HEH, 2015 WL 5178993, at *2 (E.D. Va. Sept. 4, 2015) (citing *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993)).

Movants identify two interests in this action. First, Movants claim that they currently allocate resources to opposing ED's longstanding "severe or pervasive" definition of sexual harassment; since the Rule has abandoned that definition, they say they no longer need to expend resources in that way. Mot. to Intervene at 9. Second, Movants claim a general interest in free speech on behalf of themselves and their members. *Id.* Both of these purported interests are not "significantly protectable" as required by Rule 24(a).

To start, Movants improperly conflate Article III standing requirements with Rule 24(a)(2)'s requirement that would-be intervenors have a significantly protectable interest. The Fourth Circuit has not required intervening defendants to establish their Article III standing.[3] *See N.C. State Conference of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019).[4]

Moreover, although Movants claim a diversion of resources that is the "mirror-image" of Plaintiffs' harms, their purported loss is actually too speculative to amount to a concrete injury. *See South Carolina v. United States*, 912 F.3d 720, 727 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 392 (2019) ("The Supreme Court has repeatedly held that an alleged harm is too 'speculative' to support Article III standing when the harm lies at the end of a 'highly attenuated chain of possibilities.'" (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013))). For Movants' alleged injury to come to pass, there would need to be many links in the logical chain: judgment would have to be entered for Plaintiffs, ED would need to readopt its past definition of sexual harassment, *and* Movants would need to shift their operations as a result of that regulatory change, rather than as a result of state, local, and university policies adopting different definitions of sexual harassment. There are too many links in this chain of events to withstand scrutiny.

Movants' second claimed interest—in protected speech—is a generalized policy goal that is insufficient to amount to a "direct substantial interest" in this action. Courts have denied mandatory intervention where the intervenors raised "generalized public policy interests shared by a substantial portion of the population." *See League of Women Voters of Va. v. Va. State Bd.*

---

[3] In the event that Movants seek to invoke appellate jurisdiction to review any portion of the district court's rulings, they would need to establish their Article III standing. *Doe v. Public Citizen*, 749 F.3d 246, 262 (4th Cir. 2014).

[4] To the extent some courts misunderstood the Supreme Court's decision in *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017), to require that all intervenors must establish their Article III standing, the Court recently clarified its decision. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, _ S. Ct. _, No. 19-431, 2020 WL 3808424, at *8 n.6 (2020) ("An intervenor of right must independently demonstrate Article III standing *if it pursues relief that is broader than or different from the party invoking a court's jurisdiction*." (emphasis added)).

*of Elections*, No. 6:20-CV-00024, 2020 WL 2090679, at *4 (W.D. Va. Apr. 30, 2020) (internal quotations and citations omitted); *see also Am. Coll. of Obstetricians & Gynecologists*, 2020 WL 3184024, at *4 (finding that broad policy interests cannot serve as a basis for mandatory intervention). Here, if the Rule's sexual harassment definition is invalidated, the impact on Movants' and their members' protected speech, if any, would be the same as the impacts on any other student or organization. Accordingly, the Movants' purported First Amendment interests are not sufficiently particularized to meet the requirements under Rule 24(a).

Underscoring the fact that Movants have no particularized interest at stake in the present litigation is the fact that some or all of them have intervened (or expressed intent to intervene) in the three other lawsuits challenging the Rule.[5] In each case, Movants assert the same free speech concerns, but they do not point to any particular students or groups in each particular jurisdiction who might be impacted if a future agency action were to adopt a different definition of sexual harassment. This pure policy advocacy stands in stark contrast to many of the intervention efforts that Movants cite where Plaintiffs' counsel, the American Civil Liberties Union (the "ACLU"), represented clients who were directly impacted by the subject of the particular litigation. *See, e.g.*, *Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16 C 4945, 2016 WL 3269001 (N.D. Ill. June 15, 2016) (in which the ACLU represented three transgender students who, with an advocacy group, sought to intervene in litigation that would determine whether they could use the locker rooms consistent with the gender they live every day).

Additionally, intervention as of right is inappropriate because the Movants claimed interest is ancillary to the questions necessary to resolve Plaintiffs' APA claims. *See, e.g.*, *Md. Restorative Justice Initiative*, 316 F.R.D. at 115 (denying a motion to intervene where, *inter alia*,

---

[5] Notably, the Movant that Judge Nichols described as "having presented the closest question" on mandatory intervention—FIRE—did not satisfy the requirements of Rule 24(a) according to Judge Koeltl. D.D.C. Minute Order; *State of N.Y.*, 2020 WL 3962110, at *3–4.

the underlying case involved different legal issues than the purported interests raised by the intervenors). As a result, Movants cannot demonstrate that denial of the Motion would result in the "[p]ractical impairment" of their ability to protect their interests. *Am. Coll. of Obstetricians & Gynecologists*, 2020 WL 3184024, at *4 (citing *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986)).

If the Court upholds the Rule's "severe *and* pervasive" definition of sexual harassment under the APA, Movants' free speech concerns will be in no way hindered. The canon of constitutional avoidance would counsel towards the Court upholding the definition under the APA and not the First Amendment. *See, e.g.*, *King v. Burwell*, 759 F.3d 358, 376 n.6 (4th Cir. 2014), *aff'd*, 135 S. Ct. 2480 (2015). If the Court strikes Section 106.30's definition as invalid under the APA, the Court need not weigh in on the constitutional question as a threshold issue. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (finding that an agency action violated the APA without reaching the question whether the action was compelled).

In the event Plaintiffs are ultimately successful *and* the "severe *and* pervasive" definition of sexual harassment in the Rule is found to violate the APA *and* ED reinstates its prior "severe *or* pervasive" definition of harassment in interim guidance or in a new notice of proposed rulemaking, Movants can pursue vindication of their First Amendment theory through a variety of avenues. Any subsequent rulemaking by ED would have to comply with the APA's notice and comment requirements, thus providing Movants ample opportunity to advocate for their interests and legal position. *See AAP v. FDA*, No. PWG-18-883, 2019 WL 5964562, at *1 (D. Md. May 31, 2019) (finding intervenors could not show that their ability to protect their interests in the subject matter of the litigation was impaired because any remedy in the underlying case would

8

require further action in compliance with the APA notice and comment process, where the intervenors would have the opportunity to protect their interest). Moreover, nothing prohibits Movants from challenging the constitutionality of a readopted sexual harassment definition in an action tailored to consider that claim. Accordingly, Movants cannot demonstrate that the instant case *would* impair their ability to protect their interests.

Judge Koeltl's recent rejection of the identical free-speech-interests argument is instructive. In denying Movant FIRE's attempt to intervene, the Court noted that the "constitutional questions" would be mooted "[i]f the Court finds that the Final Rule is valid under the APA," thus rendering movant's interests "too attenuated to warrant intervention." *State of N.Y.*, 2020 WL 3962110, at *2 n.1 (citation omitted). Further, the court explained, Rule 24(a) cannot be used to create a completely different action from the nature of the underlying case. *Id.* Because the constitutionality of the Rule was not a threshold issue that the court needed to decide to resolve the issues in the plaintiffs' complaint, "no decision . . . would foreclose the movant's argument that any other definition or procedural requirement in a [Department of Education] Rule would be unconstitutional." *Id.* at *3.

This exact reasoning is applicable here. Since Movants allege completely different legal theories from the legal issues raised in Plaintiffs' complaint, there would be no precedent set by this action that would foreclose Movants' rights to make their arguments and have their free speech theories heard in a separate case. This Court should reject Movants' attempts to create a wholly different action where the present one does not threaten their interests.

B. **Because Movants and ED share the objective of upholding the Rule's definition of sexual harassment, ED adequately represents Movants' interests, if any.**

The Fourth Circuit has held that where a party seeking intervention has the "same ultimate objective as a government party," a presumption arises that the proposed intervenor's

interests are adequately represented. *Stuart*, 706 F.3d at 351; *see also Am. Coll. of Obstetricians & Gynecologists*, 2020 WL 3184024, at *4. This presumption can only be rebutted by a "very strong showing of inadequacy" and requires establishing that there is "adversity of interest, collusion, or nonfeasance." *Stuart*, 706 F.3d at 351–52. Like Movants, ED—which has been working on the Rule since 2017 and is eager for it to become effective next month, *see* 85 Fed. Reg. at 30,535[6]—is deeply invested in Section 106.30's "severe *and* pervasive" definition of sexual harassment being upheld. Because "both defendants and Movants seek the same result: to uphold and defend the challenged regulations," *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. ELH-16-105, 2017 WL 2778820, at *11 (D. Md. June 26, 2017), the strong presumption of adequate representation attaches.

The Fourth Circuit has squarely rejected the precedent on which Movants rely to argue that their burden on this requirement is minimal; rather, the cases Movants cite merely "stand for the conventional proposition that where the existing party and proposed intervenor seek divergent *objectives*, there is less reason to presume that the party (government agency or otherwise) will adequately represent the intervenor." *Stuart*, 706 F.3d at 352 (emphasis added). Movants' efforts to cast off the presumption because they have diverging "interests" from ED, Mot. to Intervene at 12, misstate the Fourth Circuit case law. "The presumption of adequate representation does not depend on legal theories or tactics," *Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. 8:18-CV-00961-PWG, 2018 WL 5846816, at *4 (D. Md. Nov. 8, 2018), or a showing that the intervenor has a "stronger" or "more specific" interest than the

---

[6] ED has consistently and strongly defended the Rule. *See Secretary DeVos on Title IX: Justice Is Not a Political Issue*, U.S. Dep't of Educ. (May 8, 2020), https://www.youtube.com/watch?v=b3QqDsUYGtM; Christopher Brito, *ACLU Sues Betsy DeVos over New Rules on Campus Sexual Harassment and Assault*, CBS News (May 15, 2020), https://www.cbsnews.com/news/aclu-betsy-devos-sexual-assault-rules-college-campus-title-ix/ (in which ED's spokesperson vigorously defends against Plaintiffs' lawsuit). ED also strenuously litigated against a challenge to its 2017 rescission of past guidance and issuance of new guidance. *See SurvJustice Inc. v. DeVos*, No. 18-cv-00535-JSC, 2019 WL 5684522 (N.D. Cal. Nov. 1, 2019).

government. *Outdoor Amusement Bus. Ass'n, Inc.*, 2017 WL 2778820, at *7. "The question, simply put, is whether the would-be intervenor and governmental party seek the same outcome in the litigation." *Makhteshim Agan of N. Am.*, 2018 WL 5846816, at *4.

Movants have made no effort to overcome the presumption of ED's adequate representation. They merely argue that ED cannot represent their interests because ED sought to "balance protection from sexual harassment with protection of freedom of speech and expression," while Movants' "interests [are] on one side of those scales: the free-speech rights of university students and faculty." Mot. to Intervene at 12. Relatedly, Movants say they do not share ED's "long-term interest in preserving the scope of [the agency's] discretion to issue rules under Title IX." *Id.* at 14. Courts in this Circuit have repeatedly rejected similar arguments. *See, e.g., Stuart*, 706 F.3d at 353 ("[T]he relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy."); *Am. Coll. of Obstetricians & Gynecologists*, 2020 WL 3184024, at *5 (rejecting that "potential disagreements . . . on how to advance this litigation" or differences between interests that "are 'stronger' and more 'specific' than the agency's general interest" amount to "adversity of interest or inadequate representation of interests"); *Outdoor Amusement Bus. Ass'n, Inc.*, 2017 WL 2778820, at *10–*11 (in denying intervention, rejecting movants' arguments that their ultimate goal differed from federal agencies' because the government had "a duty to balance the interest of employers and workers" and that the government's decision not to challenge plaintiffs' standing amounted to nonfeasance).

Simply put, Movants cannot escape the fact that they, like the government, strongly desire Section 106.30's "severe *and* pervasive" definition of sexual harassment to prevail. As Judge Koeltl noted in finding that ED would adequately represent FIRE's interests, "[c]hoosing

an alternative strategy or having different motives for litigating a case are not sufficient to warrant intervention as of right." *State of N.Y.*, 2020 WL 3962110, at *4.

## II. Permissive Intervention Should be Denied Because Movants' Involvement Would Prejudicially Expand the Scope of Litigation and Delay Proceedings.

Under Rule 24(b), a court may exercise its broad discretion to "permit" intervention where the applicant has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In doing so, a court "must consider whether the intervention will unduly delay or prejudice the adjudication." Fed. R. Civ. P. 24(b)(3). This Court should exercise its broad discretion to deny permissive intervention because the risk of both undue delay and prejudice in adjudicating the merits outweigh any corresponding benefit presented by Movants' potential contributions. *See Makhteshim Agan of N. Am.*, 2018 WL 5846816, at *6.

Although Judge Nichols chose, with little explanation, to exercise the "wide latitude" of discretion given to district courts to permit intervention, *see* D.D.C. Minute Order, Judge Koeltl did not, *see State of N.Y.*, 2020 WL 3962110, at *4 n.4. As is true in this case too, Judge Koeltl concluded that "movant's constitutional defenses would unduly complicate the action" "by introducing new issues of law" without "contributing to the development of the factual record related to the current parties' dispute." *Id.* at *4 (internal citation omitted). The Southern District of New York's rationale for rejecting FIRE's request applies with equal force here.

Movants impermissibly seek to expand the scope of the litigation by asserting constitutional arguments that are unrelated to Plaintiffs' APA challenge. Permissive intervention is not advisable where it would result in the injection of broad legal issues that are outside the scope of plaintiffs' narrowly tailored complaint. *See Am. Coll. of Obstetricians & Gynecologists*, 2020 WL 3184024, at *7. The Fourth Circuit has noted that "[i]t is incontrovertible" that

additional parties burden case management at every stage. *Stuart*, 706 F.3d at 350. Adding more parties—and more legal issues—to this action will consume additional resources of both the Court and existing parties. *Id.* This is particularly true for Plaintiffs, who will experience prejudice by having to litigate against two sets of adversaries. *See James City Cty. v. U.S. E.P.A.*, 131 F.R.D. 472, 475 (E.D. Va. 1990). Plaintiffs' concerns about prejudice and delay are not hypothetical or unnecessarily alarmist. In *Commonwealth of Pennsylvania v. DeVos*, where Judge Nichols permitted Movants' intervention, Movants have already derailed the parties' and the court's settled expectations about the timeline to adjudicate Plaintiffs' motion for a preliminary injunction by requesting discovery and an evidentiary hearing—neither of which were sought (or even contemplated) by the parties or the court. Intervenors' Mot. for Leave to Take Depositions, ECF 76, *Commonwealth of Pa. v. DeVos*, No. 1:20-cv-1468-CJN (D.D.C. July 15, 2020) (noting that Plaintiffs and the government oppose the motion).

Furthermore, Movants' potential contributions would be, at most, minimal. Because the would-be intervenors' interests are adequately represented by the government, the "case for permissive intervention diminishes or disappears entirely." *Makhteshim Agan of N. Am.*, 2018 WL 5846816, at *6 (citations omitted); *see also State of N.Y.*, 2020 WL 3962110, at *4. To the extent Movants seek an opportunity to weigh in on the legal issues presented, Plaintiffs would welcome Movants filing an *amicus curiae* brief. *See Stuart*, 706 F.3d at 355 (deeming the ability to file an *amicus* brief suitable recourse for would-be intervenors); *Makhteshim Agan of N. Am., Inc.*, 2018 WL 5846816, at *6 (same); *Outdoor Amusement Bus. Ass'n, Inc.*, 2017 WL 2778820, at *13 (same).

Accordingly, this Court should deny Movants' request for permissive intervention because intervention will likely cause significant undue delay and prejudice, distracting from

Plaintiffs' APA challenge while providing minimal—if any—meaningful contributions to the case's adjudication.

## CONCLUSION

Movants are not entitled to intervene as of right pursuant to Rule 24(a)(2) because they have failed to demonstrate that they have a substantial protected interest that would be impaired by this litigation and that would not be adequately represented by the Defendants. Movants' request for permissive intervention under Rule 24(b)(1)(B) should also be denied because the harm caused by undue delay and prejudice would substantially outweigh Movants' potential contribution to the adjudication of this action. Accordingly, Plaintiffs respectfully request that the Court deny Movants' motion to intervene.

Dated: July 21, 2020

Respectfully Submitted,

*/s/ Joshua Sohn*

Joshua Sohn (*admitted pro hac vice*)
Daniel Lewkowicz (*admitted pro hac vice*)
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038
Phone: (212) 806-5400
Fax: (212) 806-6006
jsohn@stroock.com
dlewkowicz@stroock.com


Jennesa Calvo-Friedman *(admitted pro hac vice)*
Rebecca A. Ojserkis *(admitted pro hac vice)*
Sandra S. Park *(admitted pro hac vice)*
Anjana Samant *(admitted pro hac vice)*
Hilary Ledwell *(admitted pro hac vice)*
Ria Tabacco Mar *(admitted pro hac vice)*
American Civil Liberties Union Foundation
Women's Rights Project
125 Broad Street 18th Floor

New York, New York 10004
Phone: (212) 549-2644
Fax: (212) 549-2580
jcalvo-friedman@aclu.org
rojserkis@aclu.org
spark@aclu.org
asamant@aclu.org
hledwell@aclu.org
rmar@aclu.org

Seamus Curley (Bar # 21172)
Stroock & Stroock & Lavan LLP
1875 K Street NW
Washington, DC 20006-1253
Phone: (202) 739-2889
Fax: (202) 739-2895
scurley@stroock.com

*Attorneys for Plaintiffs*