# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KNOW YOUR IX, et al.,<br>    *Plaintiffs*,<br>v.<br>Elisabeth D. DEVOS, in her official capacity as U.S. Secretary of Education, et al.,<br>    *Defendants*,<br>FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION, INDEPENDENT WOMEN'S LAW CENTER, and SPEECH FIRST, INC.,<br>    [*Proposed*] *Intervenor-Defendants*. | Civil Action No. 1:20-cv-1224-RDB |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO INTERVENE AS DEFENDANTS

As Plaintiffs note, there are four pending challenges to the Final Rule: this case, a case in D.C., *Pennsylvania v. DeVos*, No. 1:20-cv-1468 (D.D.C.); a case in New York, *New York v. U.S. Dep't of Educ.*, No. 1:20-cv-4260 (S.D.N.Y.); and a case in Massachusetts, *Victim Rights Law Ctr. v. DeVos*, No. 20-cv-11104 (D. Mass.). The court in D.C. granted Movants intervention, the court in Massachusetts denied Movants intervention, and the court in New York denied (one of) Movants intervention. The latter two decisions, which are currently being appealed, are unpersuasive. One denied intervention before the parties even filed *responses* and failed to consider permissive intervention; the other inexplicably assumed that FIRE was not "argu[ing] that the Final Rule was properly adopted in conformity with the APA." *New York*, Doc. 47 at 4. Judge Nichols' decision in D.C. is far more persuasive.

But whatever the merits of the other three cases, Movants' intervention in *this* case is uniquely appropriate. Unlike the other cases, where the parties are litigating preliminary injunctions at breakneck speed, the parties here are litigating at a normal pace. *Cf. id.* (denying permissive intervention because "a motion for preliminary injunction is presently being briefed on a very short timeline"). Plaintiffs' claims of delay and prejudice thus ring hollow.

Further, Movants are "uniquely qualified" to intervene in this case because they are "the 'mirror-image'" of Plaintiffs. Mot. (Doc. 20-1) 17 (quoting *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020)). Plaintiffs and Movants are both "nonprofit organizations whose missions and work relate to educating, supporting, and providing a variety of services to and advocacy on behalf of students." Compl. (Doc. 1) ¶21. And Plaintiffs and Movants both argue that their resources and members will be injured—Plaintiffs if the Rule is maintained, and Movants if the Rule is vacated. Rule 24 has no ideology: If Plaintiffs can bring this case, then Movants can defend it. And if the ACLU and other student-rights groups can intervene alongside the government in numerous cases, *see* Mot. 18, then Movants can intervene here.

This all makes an easy case for permissive intervention. Plaintiffs concede that this Court would be within its "'wide latitude' of discretion … to permit intervention" here. Opp. (Doc. 31) 12. And Defendants *consent* to permissive intervention. Doc. 25. Plaintiffs do not dispute that Movants bring a wealth of expertise on the issues in this

case, offer a constitutional perspective that the parties will not, and will be the *only* voice for the college students who will lose vital protections if the Rule is vacated. Nor do Plaintiffs offer any real argument why Movants' participation will cause prejudice or delay—let alone *undue* delay. Movants have worked diligently not to slow down this case (indeed, Plaintiffs are the ones who asked for more time to respond to this motion). And Movants pledge to focus their briefs on their own unique defenses and not duplicate Defendants' arguments.

Alternatively, Movants qualify for intervention as of right. Plaintiffs' assertion that Movants lack an interest in this case cannot be squared with their own theory of Article III standing. And Plaintiffs' view that Defendants adequately represent Movants is apparently not shared by Defendants themselves, whose "silence" in "taking no position on … intervention" as of right is "deafening." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992).

Under either Rule 24(b) or Rule 24(a)(2), this Court should allow Movants to intervene and participate as defendants in this important case.

## I. Movants' constitutional arguments are directly relevant to issues already before the Court.

The crux of Plaintiffs' opposition to intervention, both as of right and permissively, is their assertion that Movants seek to inject new *claims* into the case. Opp. 9, 12. But Movants seek only to introduce *arguments* that no one else will make on issues that are already before the Court. Although Plaintiffs elide this distinction, it is critical;

3

those with a concrete interest in a case who seek to make new arguments on issues the Court must decide are archetypal intervenors under Rule 24. *See, e.g.*, *Me-Wuk Indian Cmty. v. Kempthorne*, 246 F.R.D. 315, 321 (D.D.C. 2007) ("Although [movant] may employ different theories and set forth different arguments than plaintiff, the central interest at issue remains constant.").

Movants' unique arguments are critical to this case because, even if Movants weren't raising them, the Court could not blind itself to the constitutional implications of Plaintiffs' position. Indeed, Movants' constitutional arguments bear on every key issue in this case.

**Standing.** Plaintiffs do not have standing to complain that the Final Rule forces schools to do things that the Constitution requires them to do anyway. Thus, if Movants are correct that the Final Rule's definition of sexual harassment simply enforces the requirements of the First Amendment, Plaintiffs do not have standing to challenge several key aspects of the Final Rule.

A long line of cases shows that, if Movants' constitutional claims have merit, then many of Plaintiffs' claims must be dismissed for lack of redressability. In *Black v. LaHood*, 882 F. Supp. 2d 98, 106 (D.D.C. 2012), for example, the court dismissed a challenge to a federal road closure because a separate D.C. ordinance also prohibited drivers from using the road. *Id.* Many other cases reach similar results. *See, e.g.*, *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (economic injuries caused by federal prohibition on cockfighting not redressable because cockfighting is also illegal under

4

state law); *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1256–58 (11th Cir. 2009) (injuries caused by canon of judicial conduct requiring disqualification were not redressable because unchallenged state statute also required disqualification); *Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d 421, 430 (4th Cir. 2007) (billboard company lacked redressable injury from local ordinance challenged under the First Amendment because it could not place sign at desired location under separate, unchallenged ordinance). As Judge Easterbrook has explained for the Seventh Circuit, a plaintiff cannot establish redressability where "winning the case will not alter [the] situation." *Harp Advertising Ill., Inc. v. Village of Chi. Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993).

If this Court allows Movants to intervene, they will argue that the First Amendment places significant constraints on whether and how schools can lawfully regulate and punish students. An order from this Court vacating the Final Rule or suspending its enforcement would not relieve schools from those constitutional obligations. Plaintiffs' alleged injuries thus could not be redressed.

**Merits.** One of the centerpieces of Plaintiffs' lawsuit is their claim that key aspects of the Final Rule are inconsistent with Title IX and therefore "contrary to law" under the APA. *See* Compl. ¶¶ 68-75. To assess this claim, the Court will apply *Chevron*'s two-step framework. At Step One, the Court will "examine the statute *de novo*" to decide if the intent of Congress is clear. *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007). In undertaking this inquiry, the Court will not be limited to the

5

statutory interpretation arguments offered by the agency in its Final Rule but instead must deploy "the ordinary tools of statutory construction," *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013), including the canon of constitutional avoidance. If Movants are correct that Plaintiffs' construction of Title IX would cause this important statute to run afoul of the First Amendment, that is a powerful reason for this Court to reject Plaintiffs' interpretation. *See, e.g., Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–72 (2001) (applying canon of constitutional avoidance at *Chevron* Step One); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 574–75 (1988) (same). Plaintiffs apparently agree. *See* Opp. 8.

Further, Movants' constitutional arguments provide a compelling reason to conclude at *Chevron* Step One that the statute does not unambiguously mean what Plaintiffs say. *See Bank of America, N.A. v. FDIC*, 244 F.3d 1309, 1319–20 (11th Cir. 2001). Movants' constitutional arguments also provide important context for assessing the reasonableness of the Department's interpretation of the statute at *Chevron* Step Two. Although the Department did not embrace Movants' constitutional arguments, it gave weight to free speech considerations when promulgating the Final Rule. And it was right to do so if Movants' constitutional arguments have merit.[1]

---

[1] Movants' constitutional arguments *are* reasons why "the Final Rule was properly adopted in conformity with the APA." *New York*, Doc. 47 at 4. And beyond these constitutional arguments, Movants also defend the Final Rule against Plaintiffs' APA challenge. *See* Proposed Answer (Doc. 20-2). The New York court appeared to misunderstand the nature of the defenses that FIRE sought to assert—an error that infected its entire intervention analysis. *See id.* at 4-8, 12-13.

**Remedy.** Movants' constitutional arguments also bear directly on what relief Plaintiffs can obtain if they prevail on any of their claims. The Fourth Circuit has left open the possibility that, even when a regulation is arbitrary and capricious, courts can "decline to vacate [it] on equitable grounds." *Sierra Club v. U.S. Army Corps of Engrs.*, 909 F.3d 635, 655 (4th Cir. 2018). This "remand-without-vacatur" procedure is employed when the agency could likely correct any errors on remand, or when vacating the rule would have seriously negative consequences. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Plaintiffs' constitutional arguments illustrate why remand-without-vacatur would be appropriate here. Any deficiencies in the Department's reasoning would be harmless if the Constitution leads to the same result. And the equities would favor a refusal to vacate the Rule, if Movants are correct that it protects constitutional rights. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("upholding constitutional rights surely serves the public interest").

If the Court is persuaded by Movants' constitutional arguments, it will have a strong reason to dismiss this case, reject Plaintiffs' claims, or decline Plaintiffs' requested relief. Those arguments are thus directly relevant to the issues already before the Court. They ought to be heard.

## II. The Court should grant Movants permissive intervention.

Granting permissive intervention is the simplest way to resolve this motion. Permissive intervention is entirely discretionary. *See SEC v. Goldstone*, No. 12-cv-0257,

2013 WL 6920854, at *24 (D.N.M. Dec. 13, 2013) ("'The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal.'" (quoting *Moore's Federal Practice*)). When exercising its "'very broad discretion,'" this Court can grant permissive intervention based on "'almost any factor rationally relevant.'" *McIntire v. Mariano*, No. 18-cv-60075, 2019 WL 78982, at *7 (S.D. Fla. Jan. 2, 2019) (quoting *Daggett v. Comm'n on Govtl. Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999)). The only factors that Rule 24(b) *requires* this Court to consider are timeliness, the presence of a common question of law or fact, and undue delay or prejudice. *See* Fed. R. Civ. P. 24(b).

Plaintiffs do not dispute timeliness or the presence of a common question; they instead argue undue delay or prejudice. They note that Movants' intervention will add "more parties" and "more legal issues" to this case. Opp. 13. But that would be a reason to bar intervention in *every* case. And it is not a bad thing, in a case of this magnitude, to expand the number of arguments and perspectives offered. "[F]ull and adequate briefing on all sides of this case will not cause prejudice," especially where "[t]he Court will hold the Proposed Intervenor[s] to the same briefing schedule as the original parties." *Texas v. United States*, No. 4:18-cv-167, 2018 WL 10562846, at *3 (N.D. Tex. May 16, 2018). Movants have already agreed to abide by the same schedule as the parties, Mot. 15-16, and they will focus their briefs and arguments on their own unique defenses, incorporating the Department's arguments by reference wherever possible.

8

In any event, Plaintiffs' fear of additional "arguments," Opp. 12, is not a basis for denying permissive intervention. Parties suffer no "prejudice" when intervenors want "to make additional and different legal arguments to the Court based upon evidence already admitted in a completed record," since the parties "will have a full opportunity, in their . . . brief, to counter any such legal arguments." *United States v. Philip Morris USA Inc.*, No. 99-cv-2496-GK, 2005 WL 1830815, at *5 (D.D.C. July 22, 2005). This Court, too, can resolve all of the legal arguments "in the same opinion." *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577–79 (6th Cir. 2018). Notably, Plaintiffs' "welcome" Movants' participation as amici in this case. Opp. 13. "Plaintiffs cannot claim an appreciable burden from having to respond to Proposed Intervenors' legal arguments, whose submissions as *amicus curiae* the Court otherwise undoubtedly would have received." *335-7 LLC v. City of New York*, No. 20-cv-1053, 2020 WL 3100085, at *4 (S.D.N.Y. June 11, 2020).[2]

Plaintiffs' assertion that Movants somehow "derailed" the litigation in D.C., Opp. 13, is not remotely accurate. The plaintiffs in D.C. moved to preliminarily enjoin the Rule's effective date of August 18, 2020, and they filed more than sixty declarations to prove their alleged compliance costs. *Pennsylvania*, Docs. 22-2, 22-3. As Movants

---

[2] "[R]elegat[ion] to the status of amicus curiae" would not protect Movants, however, because filing an amicus brief "is not an adequate substitute for participation as a party." *Nuesse v. Camp*, 385 F.2d 694, 704 & n.10 (D.C. Cir. 1967). Amici cannot file motions, take appeals, participate in discovery, or raise defenses that the government does not. *See id.*; *United States v. City of L.A.*, 288 F.3d 391, 400 (9th Cir. 2002); *Kane Cty. v. United States*, 928 F.3d 877, 896 (10th Cir. 2019); Mot. 11. Because Movants satisfy every requirement for intervention, they should be defendants in this case—not amici.

9

promise here, Movants promised in the D.C. case to follow whatever schedule governed the parties. Before the district court set a hearing date on the preliminary-injunction motion, Movants filed a motion asking to depose six of the plaintiffs' declarants. *Pennsylvania*, Doc. 76. But when the district court set a hearing date for just a few days later, Movants voiced no objection. They successfully participated in the hearing, their participation did not cause a single second of delay, and the D.C. case is on pace to be decided faster than the cases where Movants were denied intervention. Here, moreover, there is no preliminary-injunction motion, so Movants have no need to test any declarations. Movants will not seek any discovery outside the normal process.[3]

After failing to show any downsides to Movants' intervention, Plaintiffs offer no response to the many upsides. They do not contest that Movants' intervention "will meaningfully assist the Court" because Movants are "thought leaders and repeat players in this field" with "a wealth of experience and expertise to bear on the historical, factual, and legal questions in this case." Mot. 17. And Plaintiffs do not contest that, without Movants' intervention, the "important perspectives of "the college students who 'directly' benefit from the Rule's protections for free speech and due process" "will be

---

[3] Plaintiffs' fear that Movants will take discovery is also in tension with their argument that Movants will not "'contribut[e] to the development of the factual record'" in this case. Opp. 12. Regardless, Plaintiffs' fear is unfounded because, in APA cases like this one, discovery is appropriate "only in very limited circumstances." *Brandon v. Nat'l Credit Union Ass'n*, 115 F. Supp. 3d 678, 684 (E.D. Va. 2015).

missing" from this case. Mot. 17. In fact, by repeatedly insisting that Movants will inject "new" issues into this case, Plaintiffs seem to acknowledge that Movants' unique perspective and arguments will not be litigated by the existing parties. Defendants also agree that the benefits of Movants' intervention outweigh any costs, since they "consent with respect to permissive intervention." Doc. 25.

Unable to prove that Movants fail the requirements in Rule 24(b), Plaintiffs stress a requirement that appears nowhere in that Rule: inadequate representation. Opp. 13. Plaintiffs are wrong to suggest that Defendants adequately represent Movants' interests. *Infra* III. But even if they were right, "permissive intervention … does not require the [movant] to demonstrate that its interests are inadequately represented under any standard." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 801 n.4 (7th Cir. 2019); *accord id.* at 803 (similar); *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005) ("[T]he Court may permit a party to intervene … even when the intervenor's interests are completely and adequately represented by an existing party."). The word "'interest' does not appear in Rule 24(b)," let alone a requirement that the movant's interest be inadequately represented. *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996).

True, a few courts have stated that the government's adequate representation means that "the case for permissive intervention … disappears." Opp. 13. But as the ACLU convinced another court, the case where this language originates "did not cite any authority for its conclusion," and its conclusion "does not comport" with the text

11

of Rule 24(b) or the caselaw applying it. *Students & Parents for Privacy v. U.S. Dep't of Educ.*, 2016 WL 3269001, at *3 (N.D. Ill. June 15, 2016). The better view is that "Putative Intervenors are not required to make [an inadequacy] showing for permissive intervention." *Am. Humanist Ass'n v. Md.-Nat'l Capital Park & Planning Comm'n*, 303 F.R.D. 266, 271 (D. Md. 2014). At most, adequacy is "only a minor variable in the Rule 24(b) decision calculus," *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014)—one that doesn't move the needle here (or in the many similar cases where groups like the ACLU have permissively intervened).

### III. Alternatively, Movants are entitled to intervention as of right.

The requirements for intervention as of right—timeliness, interest, impairment of interest, and adequacy of representation—are also satisfied here. *See* Fed. R. Civ. P. 24(a)(2). Plaintiffs challenge only the last two requirements, but their arguments are unpersuasive.

**Impairment of Interest.** Movants represent college students across the country, and the Final Rule gives those students new free speech protections that they did not have before. Mot. 9-10; *see Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1125 (3d Cir. 1992) (impairments of free speech are an "interest" under Rule 24). Plaintiffs are wrong to suggest that "[t]here are too many links in th[e] chain of events" between Movants' interests and vacatur of the Final Rule. Opp. 10. There is no chain: The Final Rule creates free speech protections that Movants' lawsuit, if successful, would directly eliminate. That would harm Movants' members immediately (schools did not provide

these protections before the Rule), and it would harm Movants "as a practical matter" by requiring them to divert resources to litigation that the Final Rule would otherwise preempt. Fed. R. Civ. P. 24(a)(2); *see also Mosbacher*, 966 F.2d at 43 ("[An intervenor's] interests are not speculative simply because the [challenged law] merely begin[s] the process through which they would come about.").

Ironically, Plaintiffs' theory of standing has far more "links in the chain"—it assumes, for example, that the Final Rule will let guilty students go free, that sexual harassment and assault will increase as a result, that schools will not take other actions to counteract any increase, and that Plaintiffs will increase spending over what they already spend on these matters. While Plaintiffs' Article III standing and Rule 24's "interest" requirement might differ in some respects, Opp. 6, any differences between the two only weaken Plaintiffs' position. Article III is, if anything, "stricter" than Rule 24, not laxer. *See NAACP v. Duplin Cty.*, No. 7:88-CV-00005-FL, 2012 WL 360018, at *3 n.3 (E.D.N.C. Feb. 2, 2012); *cf. Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018) ("[G]enerally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and vice versa.").[4]

---

[4] As Plaintiffs concede, Opp. 6, intervenors in the Fourth Circuit, unlike in the D.C. Circuit, need not demonstrate Article III standing. *Cf. Pennsylvania*, Minute Order (July 6, 2020).

Confusingly, Plaintiffs criticize Movants for having "intervened … in the three other lawsuits challenging the Rule." Opp. 7. Plaintiffs are correct: some or all Movants are intervening in every case that attempts to vacate the Final Rule and to remove its protections for college students. Plaintiffs think this proves that Movants have no "particular" interest in this case, Opp. 7, but it actually proves the opposite. Especially in the world of nationwide injunctions, it only takes one court in one jurisdiction to completely defeat Movants' interests. Movants have student members across the country whose rights are at risk from decisions in *any* jurisdiction so, to protect themselves, Movants must intervene in *every* case. If Movants had only a generalized policy interest in the Final Rule, they would not spend the resources to litigate as a party in cases across the country; they would file an amicus brief in the leading case.[5]

**Adequacy.** Plaintiffs' assertion that Movants and Defendants have the "'same ultimate objective,'" Opp. 9, is wrong. Defendants want to uphold the Rule by winning this case, on any ground. Movants seek a ruling that the Rule's protections are actually required by the First Amendment—a ruling that would *constrain* Defendants and their

---

[5] The New York court's observation that Movants could bring their constitutional claims in "separate litigation," *New York*, Doc. 47 at 14, gets Rule 24 backwards. "[T]he opportunity to raise the same issue in another forum" is "no bar to intervention of right"; such a rule would encourage the very "fragmented approach to adjudication that [Rule 24] seek[s] to avoid." *Nuesse*, 385 F.2d at 702; *accord Kaufman v. Societe Internationale Pour Participations Industrielles et Commerciales, S.A.*, 343 U.S. 156, 161 (1952) (approving intervention to avoid "a multiplicity of separate actions"); *NRDC v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977) (approving intervention because the movants' "involvement may lessen the need for future litigation to protect their interests").

successors from changing the Rule. This is not a difference of "strategy" or "tactics." Opp. 10, 12. It reflects a fundamental difference of interests. Mot. 11-14.

In any event, Plaintiffs' assertion "has been overtaken by events." *Virginia v. Ferriero*, No. 20-cv-242, 2020 WL 3128948, at *4 (D.D.C. June 12, 2020). After Plaintiffs filed their opposition, Defendants filed a motion to dismiss for lack of standing. Doc. 31. Given Defendants' standing challenges, it is clear that they "merely seek[] to defend the present suit and would accept a procedural victory." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016). They do not seek a ruling that upholds the Final Rule on the merits, backed by the force of the Constitution, as do Movants. Further, in the D.C. case, Defendants have filed their opposition to the preliminary-injunction motion. *Pennsylvania*, Doc. 63. In it, they stopped short of defending the Final Rule on the unique constitutional grounds that Movants would defend.

Finally, Defendants have taken no position on Movants' motion to intervene as of right. Doc. 25. When governmental defendants "take[] no position on the motion to intervene," courts typically grant intervention because the government's "silence on any intent to defend the intervenors' special interests is deafening." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (cleaned up); *accord Mosbacher*, 966 F.2d at 44 (same); *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017) ("[T]he Department nowhere argues in its intervention papers that it will

adequately protect the States' interests," so "the [Movants] have raised sufficient doubt concerning the adequacy of the Department's representation of their interests").[6]

\* \* \*

This Court takes a "'liberal'" approach to intervention. *Nat'l Fed'n of the Blind, Inc. v. Lamone*, 2014 WL 4388342, at \*4 (D. Md. Sept. 4, 2014) (Bennett, J.). Because Plaintiffs provide no reason to deviate from that approach, this Court should grant Movants' motion and allow them to intervene as defendants.

| | |
|---|---|
| Dated: August 4, 2020 | Respectfully submitted, |
|   /s/  Nicole J. Moss      |   /s/  William S. Consovoy    |
| Charles J. Cooper (pro hac vice forthcoming)<br>Brian W. Barnes (pro hac vice forthcoming)<br>Nicole J. Moss (#20222)<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Ave., NW<br>Washington, D.C. 20036<br>(202) 220-9600<br>ccooper@cooperkirk.com<br>bbarnes@cooperkirk.com<br>nmoss@cooperkirk.com | William S. Consovoy (#20397)<br>Cameron T. Norris (#21328)<br>Alexa R. Baltes (pro hac vice)<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Blvd., Ste. 700<br>Arlington, VA 22209<br>(703) 243-9423<br>will@consovoymccarthy.com<br>cam@consovoymccarthy.com<br>lexi@consovoymccarthy.com |
| *Counsel for Foundation for Individual Rights in Education* | *Counsel for Speech First, Inc. and Independent Women's Law Center* |

---

[6] By denying intervention before the parties even filed *responses* to Movants' motion to intervene, the Massachusetts court did not give the government an opportunity to state a position on whether it adequately represented Movants. *See Victim Rights Law Ctr.*, Doc. 35. That oddity, plus the court's failure to address any of Movants' arguments on adequacy, undermine the persuasiveness of that decision.

16