**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| KNOW YOUR IX, *et al.*, | |
| Plaintiffs, | |
| v. | No. 1:20-cv-01224-RDB |
| ELISABETH D. DEVOS, *in her official capacity as Secretary of Education, et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**INTRODUCTION**......................................................................................................................... 1

**ARGUMENT**............................................................................................................................... 2

I.      Know Your IX Lacks Standing.............................................................................. 2

    A.      Know Your IX Has Not Adequately Pleaded An Injury-In-Fact .......................... 2

    B.      Know Your IX Has Not Adequately Pleaded Traceability Or
           Redressability..................................................................................................... 9

II.     COPAA Lacks Standing ....................................................................................... 11

III.    GGE Lacks Standing............................................................................................ 16

IV.    SSAIS Lacks Standing ......................................................................................... 17

**CONCLUSION** ......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) .................................................................................................. 13

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
    326 F.3d 505 (4th Cir. 2003) ................................................................................... 9

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984) ................................................................................................ 14

*Buchanan v. Consol. Stores Corp.*,
    125 F. Supp. 2d 730 (D. Md. 2001) ......................................................................... 4

*Cannon v. Univ. of Chi.*,
    441 U.S. 677 (1979) ................................................................................................ 14

*CASA de Maryland, Inc. v. Trump*,
    --- F.3d ----, 2020 WL 4664820 (4th Cir. Aug. 5, 2020) ................................. *passim*

*CASA v. DHS*,
    284 F. Supp. 3d 758 (D. Md. 2018) ....................................................................... 10

*CASA v. DHS*,
    924 F.3d 684 (4th Cir. 2019) ................................................................................. 10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................................. 2

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987) ................................................................................................ 14

*Concerned Citizens of Carderock v. Hubbard*,
    84 F. Supp. 2d 668 (D. Md. 2000) .......................................................................... 3

*Glass Packaging Inst. v. Regan*,
    737 F.2d 1083 (D.C. Cir. 1984) ............................................................................. 14

*Guild v. Securus Techs., Inc.*,
    No. 1:14-CV-366-LY, 2015 WL 10818584 (W.D. Tex. Feb. 4, 2015) ................... 15

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .................................................................................................. 2

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) .................................................................................................. 3

*Knowledge Ecology Int'l v. Nat'l Insts. of Health*,
No. CV PJM 18-1130, 2019 WL 1585285 (D. Md. Apr. 11, 2019) ........................................ 17

*Landsdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*,
713 F.3d 187 (4th Cir. 2013) ............................................................................................ 10, 11

*Lane v. Holder*,
703 F.3d 668 (4th Cir. 2012) ........................................................................................ 1, 8, 17

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .............................................................................................................. 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................................ 10, 11

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ........................................................................................................ 13, 14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) .............................................................................................................. 13

*Mayor & City Council of Balt. v. Trump*,
416 F. Supp. 3d 452 (D. Md. 2019) ....................................................................................... 6

*N.Y. Reg'l Interconnect, Inc. v. FERC*,
634 F.3d 581 (D.C. Cir. 2011) .............................................................................................. 11

*Nat'l Fed'n of the Blind v. U.S. Dep't of Educ.*,
407 F. Supp. 3d 524 (D. Md. 2019) ..................................................................................... 17

*PETA v. USDA*,
797 F.3d 1087 (D.C. Cir. 2015) .............................................................................................. 5

*Proctor & Schwartz, Inc. v. Rollins*,
634 F.2d 738 (4th Cir. 1980) ................................................................................................ 16

*Renal Physicians Ass'n v. HHS*,
489 F.3d 1267 (D.C. Cir. 2007) ............................................................................................ 11

*SurvJustice Inc. v. DeVos*,
No. 18-cv-00535-JSC, 2018 WL 4770741 (N.D. Cal. Oct. 1, 2018), ........................... 8, 9, 14

*SurvJustice Inc. v. DeVos*,
No. 18-cv-00535-JSC, 2019 WL 5684522 (N.D. Cal. Nov. 1, 2019) ...................................... 9

*Torres v. DHS*,
411 F. Supp. 3d 1036 (C.D. Cal. 2019) ................................................................................ 15

*Turlock Irr. Dist. v. FERC*,
786 F.3d 18 (D.C. Cir. 2015) .................................................................................................. 5

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
 454 U.S. 464 (1982) ................................................................................................. 9

*Waterford Citizens' Ass'n v. Reilly*,
 970 F.2d 1287 (4th Cir. 1992) ................................................................................. 3

*White Tail Park, Inc. v. Stroube*,
 413 F.3d 451 (4th Cir. 2005) ................................................................................... 6

**Statutes**

5 U.S.C. § 702 .......................................................................................................... 13

**Regulations**

34 C.F.R. § 106 .......................................................................................................... 9

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal
 Financial Assistance,
 85 Fed. Reg. 30,026 (May 19, 2020) ........................................................................ 1

**Other Authorities**

14D Charles A. Wright & Arthur R. Miller,
 Federal Practice and Procedure § 3827 (4th ed.) .................................................... 16

**INTRODUCTION**

Plaintiffs challenge a rule promulgated by the Department of Education (ED) that, for the first time, clearly defines behavior constituting sexual harassment under Title IX and sets forth fair procedures for addressing such misconduct. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) (to be codified at 34 C.F.R. pt. 106) (Rule). As Defendants explained in their motion to dismiss, Plaintiffs lack standing to assert their claims. *See* Mem. in Supp. of Defs.' Mot. to Dismiss at 8-28, ECF No. 34-1 (Defs.' Mem.). Specifically, Plaintiffs Know Your IX, Girls for Gender Equity (GGE), and Stop Sexual Assault in Schools (SSAIS) fall far short of adequately pleading an injury to their organizational interests that is fairly traceable to the Rule. *See id.* at 10-19, 22-26. Instead, the harms alleged by these Plaintiffs are speculative and represent at best mere budgetary choices, rather than a frustration of their missions coupled with a significant drain on their resources. *See id.* Similarly, Plaintiff Council of Parent Attorneys and Advocates, Inc. (COPAA) cannot demonstrate associational standing based on conclusory and conjectural allegations about a single purported member who would prefer to practice law in a different regulatory environment. *Id.* at 19-22. Nothing in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Pls.' Opp.), ECF No. 38, establishes otherwise.

Underscoring Defendants' position is the Fourth Circuit's published decision in *CASA de Maryland, Inc. v. Trump* (*CASA*), --- F.3d ----, 2020 WL 4664820 (4th Cir. Aug. 5, 2020), which was issued five days after Defendants filed their motion to dismiss. In that case, the Fourth Circuit held that a voluntary reallocation of resources is insufficient to establish organizational standing. *Id.* at *8-10. The Fourth Circuit explained that its decision in *Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012), made clear that, when an organization is not required to respond to the rule "as a matter of law," its "unilateral and uncompelled response to the shifting needs of its

members cannot manufacture an Article III injury." *CASA*, 2020 WL 4664820, at *9.  The Court

also explained that, under the Supreme Court's decision in *Havens Realty Corp. v. Coleman*

(*Havens*), 455 U.S. 363, 379 (1982), "[o]rganizational injury, properly understood, is measured

against a group's ability to *operate* as an organization, not its theoretical ability to *effectuate* its

objectives in its ideal world." *CASA*, 2020 WL 4664820, at *9.  While plaintiffs may "feel[]

strongly that [they] must reallocate resources to best serve [their] members amidst a changing

legal landscape and that [they] would prefer to operate in an environment where the Rule does

not exist," Article III standing requires more than spending money in response to government

action that supposedly undermines an organization's policy mission. *Id.*  "Resource reallocations

motivated by the dictates of preference, however sincere, are not cognizable organizational

injuries because no action by the defendant has directly impaired the organization's ability to

operate and to function." *Id.*  In light of *CASA*, Plaintiffs' standing theory—indisputably

grounded in Plaintiffs' "decisions to voluntarily spend money to combat the effects of a given

policy," *id.* at *10 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013))—cannot

proceed.

 Defendants therefore respectfully request the Court grant their motion to dismiss for lack

of subject-matter jurisdiction.

## ARGUMENT

### I. Know Your IX Lacks Standing

#### A. Know Your IX Has Not Adequately Pleaded An Injury-In-Fact

 Attempting to minimize the Fourth Circuit's detailed analysis in *CASA* as "*dicta*," Pls.'

Opp. at 21, Plaintiffs contend that the Complaint's allegations about Know Your IX are

sufficient to satisfy the strict requirements of Article III, *id.* at 18-26.  Their arguments are

unpersuasive.

First, Plaintiffs insist that Know Your IX may sue in its own name because "[t]here is no requirement that organizational plaintiffs assume any particular corporate form."  *Id.* at 18 n.4. While that may be true, it does not respond to Defendants' point that Know Your IX lacks *any* type of corporate, organizational, or associational form, *see* Defs.' Mem. at 10-11, or even any type of structure akin to "a nonprofit unincorporated group of village residents" or "a private, unincorporated association of property owners[,]" *see* Pls.' Opp. at 18 n.4 (quoting *Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287, 1288 n.1, 1290 (4th Cir. 1992), and *Concerned Citizens of Carderock v. Hubbard*, 84 F. Supp. 2d 668, 670, 672 n.5 (D. Md. 2000)).[1]  In fact, Plaintiffs themselves do not seem sure of what Know Your IX is; at times they refer to Know Your IX as a "project of Advocates for Youth," *id.* at 4, while Know Your IX's manager also refers to Know Your IX as a "program[.]"  Decl. of Sage Carson ¶ 2, ECF 38-1.  Regardless, Plaintiffs have offered no basis to conclude that a project or program can invoke the doctrine of organizational standing and sue in its own name.  *See* Pls.' Opp. at 18 n.4.  For that reason alone, they have failed to carry their burden under Article III.

Plaintiffs also cannot establish that the Rule frustrates Know Your IX's mission or has led to a diversion of significant resources, particularly in light of *CASA*.  As to the former, Plaintiffs assert that certain provisions of the Rule frustrate Know Your IX's goals "to end sexual violence and harassment as an impediment to education, equip students with knowledge and skills, . . . and bring greater attention to the actual experiences of survivors to combat common stereotypes." *Id.* at 18.  But nothing in the Rule affects Know Your IX's ability to provide those services; regardless of the Rule's provisions relating to remedial measures, mandatory dismissal

---

[1] Additionally, the cases cited by Plaintiffs appear to pertain to *associational standing*, not direct organizational standing in the sense advanced by Know Your IX.  *See Waterford Citizens' Ass'n*, 970 F.2d at 1290 (citing the landmark associational standing case *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977)); *Concerned Citizens of Carderock*, 84 F. Supp. 2d at 672 n.5 (discussing injury to members).

3

of complaints, or the standard of proof used in administrative proceedings, *see id.* at 18-19,

Know Your IX may continue to educate stakeholders and draw attention to the experiences of

survivors of sexual harassment.  Consequently, Know Your IX lacks organizational standing.

*See CASA*, 2020 WL 4664820, at *8-9; *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp.

2d 730, 737 (D. Md. 2001).

Nor have Plaintiffs established that Know Your IX has suffered or imminently will suffer

a significant diversion of resources based on ED's promulgation of the Rule.  In their Complaint,

Plaintiffs set out a theory of organizational standing based in part on an expected increase in calls

and training requests.  *See* Compl. ¶ 126, ECF No. 1.  Defendants' explanation that such a theory

is too speculative to confer standing, Defs.' Mem. at 11-12, has been borne out by Plaintiffs'

response, which does not even attempt to argue that such increases have materialized or

constitute an injury in fact, *see* Pls.' Opp. at 18-24.[2]

Instead, Plaintiffs offer a new theory, namely that "the Rule requires a fundamental

change in how Know Your IX prepares students to engage in school-based advocacy and to

support survivors[,]" including "having to 'find substitute methods of enforcement[.]'"  *Id.* at 19-

20 (quoting Carson Decl. ¶ 10).  But *CASA* leaves no doubt that such a claim is insufficient to

demonstrate standing.  As in that case, the Rule here "forced [Know Your IX] to do absolutely

nothing as a matter of law," and Know Your IX's "unilateral and uncompelled response to the

shifting needs of its members cannot manufacture an Article III injury."  *See CASA*, 2020 WL

---

[2] Know Your IX's manager states that "[o]ver 250 people . . . have contacted Know Your IX for
direct assistance since release of the Rule, and we have spent more than 80 hours on phone calls,
video calls, and in meetings responding."  Carson Decl. ¶ 27.  The declaration is silent, however,
as to how the volume of calls and meetings that Know Your IX handled prior to the Rule
compares to the volume after issuance of the Rule, or precisely how many of these 250 people
raised questions about the Rule itself.  *See id.* ¶¶ 27-29.  And as mentioned above, Plaintiffs'
brief in opposition to Defendants' motion omits any argument that these calls or meetings
support a finding of injury to Know Your IX.

4664820, at *9; *see also id.* at *8 (holding organization does not suffer an injury in fact where it "was forced to reallocate resources and, in turn, shift from an 'affirmative advocacy posture' (*i.e.*, advocating for certain policies) to a 'defensive one'"); *see also Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) ("[T]he expenditure of resources on advocacy is not a cognizable Article III injury.").

Equally unpersuasive is Plaintiffs' argument, unsupported by any legal authority, that Know Your IX has suffered an organizational injury because "the new Rule requires that Know Your IX discard and redraft virtually every document, training plan, or other resource it used because they heavily pegged accountability standards to Title IX's substantive provisions." Pls.' Opp. at 20. As an initial matter, the basis of Plaintiffs' argument is unclear: Plaintiffs do not explain what they mean by "heavily pegged accountability standards[.]" *Id.* Moreover, any reallocation of resources—undertaken on an entirely voluntary basis and motivated by a desire to educate stakeholders—simply cannot constitute an injury for purposes of Article III. *See CASA*, 2020 WL 4664820, at *9; *see also PETA v. USDA*, 797 F.3d 1087, 1099 (D.C. Cir. 2015) (Millett, J., dubitante) ("[A] plaintiff's voluntary expenditure of resources to counteract governmental action that only indirectly affects the plaintiff does not support standing[.]"), cited in *CASA*, 2020 WL 4664820, at *9.

The fact thus remains that, regardless of whether Know Your IX is receiving calls about the Rule or is updating its library of educational materials on an "ongoing" basis, Pls.' Opp. at 20—the Rule does not affect its "ability to operate." *See CASA*, 2020 WL 4664820, at *9. Plaintiffs' own submissions confirm as much. *See* Carson Decl. ¶ 9 (explaining that Know Your IX will likely devote more effort to state policy advocacy); *id.* ¶ 10 (noting "we have begun creating resources that advise students on using state resources and the Clery Act as possible reporting and investigation tools"); *id.* ¶ 23 (stating that Know Your IX will provide trainings

about the Rule).  While Plaintiffs may believe that the Rule affects Know Your IX's "theoretical ability to *effectuate* its objectives in its ideal world[,]" "[r]esource reallocations motivated by the dictates of preference, however sincere, are not cognizable organizational injuries because no action by [ED] has directly impaired [Know Your IX's] ability to operate and to function."  *See CASA*, 2020 WL 4664820, at *9.

Plaintiffs' remaining arguments about Know Your IX's purported injury are unavailing. Plaintiffs claim that "Know Your IX's upcoming harms are probable and imminent."  Pls.' Opp. at 20.  But they neither identify nor discuss those supposed harms, *see id.*, such that this assertion is wholly conclusory and should be rejected.  Plaintiffs next assert that "[t]he troubling consequences of the Rule are not conjectural but were ED's *intended result* according to its Notice of Proposed Rulemaking."  *Id.* (emphasis in original).  That confusing assertion is belied by ED's rulemaking documents, which do not address whether projects or programs such as Know Your IX will be able to continue operating through fielding calls or developing educational materials in response to the Rule.  And unlike *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 489 (D. Md. 2019), cited in Pls.' Opp. at 20, where the court found standing based in part on the "predictable effect of Government action on the decision of third parties," here Plaintiffs offer no basis to conclude that the Rule's allegedly predictable effects on recipients, respondents, or complainants will affect Know Your IX's ability to operate.  *See* Pls.' Opp. at 20.

Plaintiffs next attempt to refute Defendants' argument that any harm to Know Your IX is self-inflicted, Defs.' Mem. at 14-15, by noting that "an inquiry into how the Rule's provisions will operate is inappropriate at this time[,]" Pls.' Opp. at 21.  In support of this point, Plaintiffs cite the well-established principle that "[t]he standing doctrine . . . depends not upon the merits."  *Id.* (quoting *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005)).  Plaintiffs'

reliance on this principle, however, is misplaced.  Defendants are not claiming that Know Your

IX lacks standing because the Rule survives APA review; rather, Defendants are noting that any

alleged reallocations of resources by Know Your IX have been unnecessary given the provisions

of the Rule itself and trainings provided by ED.  *See* Defs.' Mem. at 14-15.

Plaintiffs also cannot distinguish *CASA* on the ground that "Know Your IX has a far

narrower mission than did CASA."  Pls.' Opp. at 22.  According to Plaintiffs, "CASA's mission

was 'to create a more just society by building power and improving the quality of life in low-

income immigrant communities,'" whereas Know Your IX is a less "generalist" organization

"*exclusively* dedicated to helping students hold their educational institutions responsible for

adequately responding to sexual violence and harassment."  *Id.* (citation omitted).  At the outset,

Plaintiffs' characterization of Know Your IX is contradicted by their own Complaint and

supporting declaration.  *See* Compl. ¶ 22 (alleging that Know Your IX "champion[s] young

people's rights to sexual health information and services and the opportunities and resources that

drive sexual health equity for all youth," and seeks to "empower high school and college students

to end sexual and dating violence in their schools"); Carson Decl. ¶ 3 (describing mission of

Know Your IX, including "to raise the voices and experiences of survivors to dispel myths and

stereotypes about sexual assault and harassment").  But in any case, nothing in *CASA* indicates

that the scope of an organization's mission, or the type of services it provides to effectuate that

mission, bears on the question whether that organization has suffered an injury in fact.  Rather,

"[o]rganizational injury, properly understood, is measured against a group's ability to *operate* as

an organization," meaning the challenged government action "directly impairs" the

organization's ability to provide its services.  *CASA*, 2020 WL 4664820, at *9.  For the reasons

discussed above, Plaintiffs cannot make such a showing with respect to Know Your IX.

Nor have Plaintiffs provided a supportable basis on which to distinguish *Lane v. Holder*, 703 F.3d at 668, cited in Defs.' Mem. at 14.  Plaintiffs claim that "[u]nlike in *Lane*, Know Your IX is not an organization that engages only in 'know your rights' programming or government-facing advocacy concerning any particular law or administrative policy."  Pls.' Opp. at 23.  But Plaintiffs erroneously limit *Lane* to its particular facts, especially given the Fourth Circuit's reliance on that case in *CASA*, where the plaintiff was not a narrowly focused advocacy group but a non-profit organization that "offers a wide variety of social, health, job training, employment, and legal services to the immigrant communities in Maryland, Washington, D.C., Virginia, and Pennsylvania."  *CASA*, 2020 WL 4664820, at *6 (citation omitted).  Thus what the Fourth Circuit explained in *Lane* and *CASA* applies equally here:  "To determine that an organization that decides to spend its money on educating members, responding to members['] inquiries, or undertaking litigation in response to legislation suffers a cognizable injury would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.'"  *Id.* at *9 (quoting *Lane*, 703 F.3d at 675).

Plaintiffs conclude their argument by relying on a single case from the Northern District of California, *SurvJustice Inc. v. DeVos*, No. 18-cv-00535-JSC, 2018 WL 4770741 (N.D. Cal. Oct. 1, 2018), *order amended on reconsideration*, No. 18-CV-00535-JSC, 2019 WL 1434144 (N.D. Cal. Mar. 29, 2019).  *See* Pls.' Opp. at 24.  That case is inapposite.  In *SurvJustice*, the court found organizational standing where "Plaintiffs allege an observed decrease in student-filed complaints following issuance of the 2017 [ED] Guidance[,]" including "a decrease in the number of sexual violence survivors seeking [one plaintiff's] services."  2018 WL 4770741, at *6.  Here, by contrast, Know Your IX has not demonstrated an actual (or "observed") change in the number of requests for its services.  Compl. ¶ 126.  Additionally, although the court in *SurvJustice* held that "Plaintiffs have sufficiently alleged that the 2017 Guidance has required

them to divert resources that otherwise 'would have been spent on some other activity that advances their goals[,]'" 2018 WL 4770741, at *8, such reprioritizations and reallocations of resources are insufficient as a matter of law in the Fourth Circuit, absent a showing that the challenged government action impairs the organization's ability to operate. *See CASA*, 2020 WL 4664820, at *9-10. Know Your IX has made no such showing here.[3]

### B. Know Your IX Has Not Adequately Pleaded Traceability Or Redressability

Plaintiffs' response to Defendants' motion also confirms that Know Your IX cannot establish the second and third elements of standing. As to traceability, Plaintiffs first contend that they need not "tie each harm to a particular provision in a 2,000-page document." Pls.' Opp. at 25. But in order to establish traceability, Plaintiffs must allege a nexus between the purported harm to Know Your IX and the "putatively illegal conduct of the defendant." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). Plaintiffs fail to satisfy this requirement, as they merely allege a change in strategy in response to the Rule's release. *See* Compl. ¶¶ 126-28. As the Rule contains multiple severable provisions, *see generally* 34 C.F.R. § 106, and Plaintiffs concede they are not challenging all of them, *see* Pls.' Opp. at 4 n.2, Plaintiffs' general theory of harm is insufficient.

Plaintiffs next claim that they have adequately pleaded traceability because "[i]t makes no difference that Know Your IX was not 'the object of the government policy' at issue in this litigation." *Id.* at 25 (citation omitted). That assertion cannot be reconciled with the Supreme

---

[3] It further bears noting that while the district court in *SurvJustice* concluded that the plaintiffs had standing, it subsequently ruled for ED on other grounds and entered judgment in ED's favor. *See SurvJustice v. DeVos*, No. 18-cv-00535-JSC, 2019 WL 5684522 (N.D. Cal. Nov. 1, 2019). The plaintiffs' appeal, which may again present the issue of their standing, is now pending before the Ninth Circuit. *See Equal Rights Advocates v. DeVos*, No. 19-17555 (9th Cir. Dec. 23, 2019).

Court's instruction that "when the plaintiff is not himself the object of the government action or inaction he challenges," "it becomes the burden of the plaintiff to adduce facts showing that those choices [of regulated third parties] have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).  As Plaintiffs do not even attempt to argue that they have pleaded such facts, *see* Pls.' Opp. at 24-26, they have failed to carry their burden.[4]  Nor can they persuasively rely on the district court's vacated decision in *CASA v. DHS*, 284 F. Supp. 3d 758, 771 (D. Md. 2018), cited in Pls.' Opp. at 25.  While the district court in that case rejected the government's argument that "the organizational plaintiffs lack direct standing because they are not 'the object of any government policy' and are merely seeking to 'vindicate their own value preferences[,]'" *CASA*, 284 F. Supp. 3d at 771, the Fourth Circuit's recent decision in *CASA* emphatically rejected such reasoning in the course of adopting the government's argument on this point.  *See CASA*, 2020 WL 4664820, at *9 (emphasizing that "the DHS Rule forced CASA to do absolutely nothing as a matter of law[,]" and "CASA's unilateral and uncompelled response to the shifting needs of its members cannot manufacture an Article III injury.").[5]

Plaintiffs are thus left with the argument that "[t]he Rule's 'coercive effect' on educational institutions, including the ceiling set on what harassment they can treat under Title IX processes, is sufficiently causally related to Know Your IX's injuries."  Pls.' Opp. at 25 (quoting *Landsdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013)).  But Plaintiffs have not adequately pleaded such a

---

[4] Plaintiffs similarly failed to respond to Defendants' point that the numerous developments in the Title IX arena over the past few years constitute a plausible alternative explanation for any increase in calls or training requests, Defs.' Mem. at 18.  *See* Pls.' Opp. at 24-26.

[5] While the Fourth Circuit also reviewed the *CASA v. DHS* decision cited by Plaintiffs, it did not consider the plaintiffs' standing.  *See CASA v. DHS*, 924 F.3d 684, at 701 n.14 (4th Cir. 2019).

coercive effect.  To the contrary, Know Your IX's alleged injury depends upon a lengthy chain of assumptions about the Title IX policies that unnamed recipients will adopt, the contents of those recipients' other codes of conduct, the behavior of students and employees, and third parties' decisions to seek information from Know Your IX instead of from the many other resources available.  *See* Defs.' Mem. at 11-12, 17.  And unlike in *Landsdowne*, where "[t]he record [was] replete with evidence that [the defendant's] exclusivity arrangement caused competing cable providers not to offer [the plaintiff] their services," 713 F.3d at 197, here Plaintiffs' theory "stacks speculation upon hypothetical upon speculation, which does not establish an 'actual or imminent' injury."  *N.Y. Reg'l Interconnect, Inc*. *v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011) (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs likewise have not established that Know Your IX's alleged injury will be redressed by the relief they seek.  Indeed, Plaintiffs offer only that "the frustration of [Know Your IX's] mission and subsequent diversion of resources is likely to cease."  Pls.' Opp. at 26. Such a conclusory argument is patently insufficient.  *See, e.g.*, *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1276, 1278 (D.C. Cir. 2007) (explaining that "causation does not inevitably imply redressability[,]" and allegations regarding causation do not excuse a plaintiff from "mak[ing] factual allegations showing that the relief it seeks will be likely to redress its injury").

## II.     COPAA Lacks Standing

Defendants' motion to dismiss demonstrated that COPAA lacks standing because the sole member upon whom it based its claim to standing—now identified as Elizabeth Abdnour, an attorney in private practice in Michigan—would lack standing to challenge the Rule in her own right.  *See* Defs.' Mem. at 19-22.  To the contrary, COPAA's unadorned speculation that Ms. Abdnour expected to shift the composition of her docket, absent other allegations of concrete injury, could not give rise to Article III standing.  Ms. Abdnour has filed a declaration in an

apparent attempt to cure the Complaint's flaws, but COPAA's standing theory remains deficient. Indeed, COPAA's theory would create associational standing any time a single attorney member thought a law or regulation might impact that attorney's law practice, a notion that would strip standing doctrine of any real meaning.

Defendants previously demonstrated that a shift in the composition of Ms. Abdnour's docket from one type of case to another does not itself amount to an Article III injury. For the first time, Ms. Abdnour now attempts to show that this shift will cause an economic injury, too. Ms. Abdnour's theory rests upon multiple layers of speculation, but so far as Defendants can tell the theory is that in light of the Rule (1) ED's Office for Civil Rights (OCR) can resolve fewer cases of alleged sexual harassment, Decl. of Elizabeth Abdnour ¶¶ 5-8, ECF 38-2; (2) OCR will now apply the same "deliberate indifference" standard that applies in litigation, so there is no incentive to file an OCR complaint even where one is permissible, *id.* ¶ 9; (3) litigation is generally more expensive than pursuing an OCR complaint, so "the cost of each representation will increase," *id.* ¶ 10; and (4) because clients will no longer pay hourly rates for Ms. Abdnour to file an OCR complaint, she "will lose this steady revenue flow," *id.* ¶ 11.

Ms. Abdnour's declaration is principally notable for what it does not (and cannot responsibly) allege: that as a result of the Rule, she will suffer a bottom-line economic injury, i.e., lower net profitability. Even if Ms. Abdnour accurately speculates that a greater percentage of her clients will choose private litigation over the filing of an OCR complaint, and even if she is correct that "the cost of each representation will increase," *id.* ¶ 10, Ms. Abdnour nowhere alleges that she will not be compensated for these increased costs: to the contrary, her declaration reveals that she expects to be paid both by her clients, *see id.* (anticipating "an overrepresentation amongst my clients of financially well-off students"), and by her adversaries in litigation, *id.* ¶ 9 (noting that "[t]he potential remedies available via litigation, particularly attorney's fees and

damages, are far superior" (emphasis added)).  And while Ms. Abdnour is apparently troubled

that she will lose the "steady revenue flow" of OCR complainant-clients paying hourly wages for

her services, *id.* ¶ 11, she never suggests that this lost revenue will not be offset by gains in other

areas.  Of course, it is not surprising that Ms. Abdnour cannot make these sorts of allegations:

she cannot know in advance which clients will seek her services in any given year; what legal

problems they may have and what options may be available to them; or how expensive and/or

potentially remunerative it might be to represent them.  Ms. Abdnour can only speculate about

the results on her legal practice of a Rule that has been in effect for less than 30 days, but such

speculation cannot give rise to Article III standing.  *See, e.g.*, *Already, LLC v. Nike, Inc*., 568

U.S. 85, 97 (2013).

       In any event, the economic injuries about which Ms. Abdnour now speculates fall far

outside the zone of interests that Congress sought to protect in Title IX.  An APA plaintiff must

show that she is either "suffering a legal wrong because of agency action" or "adversely affected

or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  A

party claiming the latter must establish that the injury she complains of "falls within the 'zone of

interests' sought to be protected by the statutory provision whose violation forms the legal basis

for his complaint."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).  The zone of

interests test "forecloses suit . . . when a plaintiff's 'interests are so marginally related to or

inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that'

Congress authorized that plaintiff to sue."  *Lexmark Int'l Inc. v. Static Control Components, Inc.*,

572 U.S. 118, 130 (2014) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v.

Patchak*, 567 U.S. 209, 225 (2012) (quotation marks omitted)).  The "essential inquiry is whether

Congress 'intended for [a particular] class [of plaintiffs] to be relied upon to challenge" the

agency action.  *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984)).

As Plaintiffs recognize, Congress had two goals when it enacted Title IX:  avoiding the use of federal resources to support discriminatory practices, and providing individuals with redress against such practices.  *See* Compl. ¶ 49; *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979).  Congress was not concerned with the docket composition of private attorneys, nor in ensuring that they received a steady revenue flow.  Ms. Abdnour's claims fall far outside Title IX's zone of interests, dooming any APA claim that she might otherwise bring on her own behalf.  *See, e.g.*, *Glass Packaging Inst. v. Regan*, 737 F.2d 1083, 1090 (D.C. Cir. 1984) (statute for "protection of tax revenues . . . is not a general mandate to monitor or protect the competitive status or financial health of the affected industry"); *Lujan*, 497 U.S. at 883 (explaining that a "company that has the contract to record and transcribe the agency's proceedings" would fall outside zone of interests of a statute requiring on the record hearings, which is "obviously enacted to protect the interests of the parties to the proceedings and not those of the reporters").

Nor can Ms. Abdnour base standing on the theory that the Rule "impairs her ability to obtain favorable results for her clients, and hampers the mission of her legal practice."  Pls.' Opp. at 26.  Some courts, of course, have accepted the notion that a mission-driven advocacy organization is injured by an agency action that makes it harder for it to obtain beneficial results for its clients. *See, e.g.*, *SurvJustice*, 2018 WL 4770741.  But such a theory is a dead letter in the Fourth Circuit after *CASA*, which holds that organizational injury is properly "measured against a group's ability to *operate* as an organization, not its theoretical ability to *effectuate* its objectives in its ideal world."  2020 WL 4664820, at *9; *see also id.* at *10 (noting that "standing demands the same of organizations as it does of individuals").  In any case, whatever Ms. Abdnour's personal political beliefs, her law office is not a non-profit organization dedicated to advancing a

14

mission; it is a for-profit professional limited liability company that is dedicated to putting food on Ms. Abdnour's table.  *See* Abdnour Decl. ¶ 1; *see also* COPAA, Elizabeth Abdnour, https://www.copaa.org/members/Default.asp?id=53780108 ("Profession: Private Practice For-Profit").  And the cases cited by Plaintiffs, which deal with concrete financial injuries to attorneys arising from conduct that directly affected them, are entirely inapposite.  *See Guild v. Securus Techs., Inc.*, No. 1:14-CV-366-LY, 2015 WL 10818584, at *4-5 (W.D. Tex. Feb. 4, 2015) (concrete injury to attorneys when their confidential telephone calls are recorded); *Torres v. DHS*, 411 F. Supp. 3d 1036, 1054 (C.D. Cal. 2019) (lawyers lost time traveling to meet clients and "could represent more clients were it not for the [communication] difficulties alleged").

Nor does Ms. Abdnour establish causation and redressability.  *See* Defs.' Mem. at 21-22. While it is surely true that "[l]egal service providers have no option but to operate within the parameters set by ED," Pls.' Opp. at 29, and that "regulated entit[ies] must follow the Rule[]," *id.* at 30, those statements are not responsive to Defendants' central point: the harms about which Ms. Abdnour speculates (financial injury to her legal practice) flow from the selection of clients she chooses to represent and how she chooses to bill them, not any decision made by ED.  And as to redressability, while Plaintiffs make the bare assertion that Ms. Abdnour would not suffer financial injury or be less able to obtain beneficial results for her clients if the Rule were enjoined, Plaintiffs provide no reason beyond sheer speculation to believe that this is so.

Because Ms. Abdnour's speculation about what the economics of her law practice might look like if the Rule were vacated cannot possibly give rise to Article III standing on her behalf, it follows that COPAA lacks associational standing.  Its claims should be dismissed.[6]

---

[6] Plaintiffs concede that because only COPAA resides in this district, venue would not be proper for the remaining Plaintiffs if COPAA were dismissed from this case.  *See* Pls.' Opp. at 31 n.10. Plaintiffs therefore request that, if COPAA's claims are dismissed, the remaining Plaintiffs'

### III.    GGE Lacks Standing

The standing theory asserted by GGE is incompatible with *CASA*.  The heart of GGE's

theory, as refined in Plaintiffs' opposition brief, is that "GGE has been compelled to develop a

new special project with an external partner to place pressure on the New York City Department

of Education and to push for resources focused on preventing sexual harassment and assault in

schools."  Pls.' Opp. at 31; *see also id.* at 32 ("GGE cannot achieve this objective without

different and additional advocacy—for which it must devote more staff time.").  Yet while GGE

apparently thinks that the Rule increases the need for it to place pressure on the New York City

Department of Education, the Fourth Circuit has squarely held that "[r]esource reallocations

motivated by the dictates of preference, however sincere, are not cognizable organizational

injuries because no action by the defendant has directly impaired the organization's ability to

operate and to function."  *CASA*, 2020 WL 4664820, at *9.  In other words, GGE may believe

that the Rule impedes its "theoretical ability to *effectuate* its objective its ideal world," *id.*, but

that is not enough to satisfy Article III.[7]

*CASA* leaves zero doubt that GGE lacks standing, but its claims would fail even under the

law as it existed when the Complaint was filed.  To establish standing based on frustration of

mission and diversion of resources, it does not suffice to show that resources were spent *on*

---

claims be transferred to a district in which venue is proper.  Such a transfer would be
permissible, however, only if the Court first found that the other Plaintiffs had standing, such that
subject-matter jurisdiction were proper in this Court.  *See* 14D Charles A. Wright & Arthur R.
Miller, Federal Practice and Procedure § 3827 n.5 (4th Ed.) (explaining that a court must have
subject-matter jurisdiction to order a change of venue and citing *Proctor & Schwartz, Inc. v.
Rollins*, 634 F.2d 738, 740 (4th Cir. 1980)).  The Court should thus evaluate the standing of each
Plaintiff; if any remain, the Court should then reach Defendants' venue objection.
[7] For related reasons, this theory also fails to satisfy causation and redressability.  The
reallocation of resources about which GGE complains is "motivated by the dictates of
preference."  *CASA*, 2020 WL 4664820, at *9.  Defendants have not forced GGE to do anything.

something; an organization must show that resources were diverted *from* something.  *See* Defs.'

Mem. at 24.  Yet even with the benefit of a 21-paragraph declaration from a GGE executive

explaining that GGE plans "to shift our strategy to develop a special project with an external

organization to place pressure on the NYC Department of Education," Decl. of Ashley Sawyer

Decl. ¶ 19, ECF No. 38-3, it is completely unclear what GGE must "forego" as a result.

*Knowledge Ecology Int'l v. Nat'l Insts. of Health*, No. CV PJM 18-1130, 2019 WL 1585285, at

*4 (D. Md. Apr. 11, 2019).  "Mere expense," absent diversion from other priorities, does not

suffice.  *Lane*, 703 F.3d at 675.

## IV.   SSAIS Lacks Standing

SSAIS also lacks standing, for like the other Plaintiffs, it makes no effort to grapple with

the Fourth Circuit's binding decision in *CASA*.  According to SSAIS, it is injured because the

Rule "creates a confusing and contradictory policy landscape."  Pls.' Opp. at 33.  As a result,

SSAIS says, its "informational and training materials" are no longer "up-to-date," and it must

"engage in the resource-draining task of recreating itself as an expert in state and local policies."

*Id.*  *CASA* is crystal clear, however, that "it is not relevant for Article III purposes whether [an

organization] felt moved to act in a particular manner."  2020 WL 4664820, at *9.  Thus, even

though SSAIS "feels strongly that it must reallocate resources to best serve its members amidst a

changing legal landscape," *id.*, that is not enough to ground standing under Article III.  That

SSAIS ignores the Fourth Circuit decision in *CASA* and instead relies upon a district court

decision that predated *CASA*, *see* Pls.' Opp. at 34 (citing *Nat'l Fed'n of the Blind v. U.S. Dep't of*

*Educ.*, 407 F. Supp. 3d 524 (D. Md. 2019)), tells the Court everything it needs to know about the viability of SSAIS's standing theory.[8]

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: September 11, 2020                Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

*/s/ Steven A. Myers*
STEVEN A. MYERS
Senior Trial Counsel
STUART J. ROBINSON
BENJAMIN T. TAKEMOTO
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Ben Franklin Station, P.O. Box No. 883
Washington, DC 20044
Phone: (202) 305-8648
Fax: (202) 616-8470
E-mail: steven.a.myers@usdoj.gov

*Attorneys for Defendants*

---

[8] Finally, Plaintiffs do not attempt to defend their catch-all theory that all Plaintiffs were injured by having to comment on the Rule and file this lawsuit challenging it. *See* Compl. ¶ 141.  And rightfully so, for as Defendants have demonstrated, this theory is foreclosed by decades of Supreme Court and Fourth Circuit precedent. *See* Defs.' Mem. at 26-28.